USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/8/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
KEVIN LOWE,                                                  :
                                        Petitioner,          :
                                                             :  18 Civ. 898 (LGS)
                -against-                                    :  14 Cr. 055 (LGS)
                                                             :
UNITED STATES OF AMERICA,                                    :  **OPINION & ORDER**
                                        Respondent.          :
                                                             :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Petitioner Kevin Lowe brings this pro se Petition to vacate, set aside or correct his sentence following trial on a charge of conspiracy to distribute oxycodone, a controlled substance. *See* 28 U.S.C. § 2255. Petitioner raises claims of ineffective assistance of counsel, failure to produce evidence, and eliciting false testimony.[1] For the reasons stated below, the Petition is denied.

## I. BACKGROUND

Lowe was convicted after a two-week jury trial from April 20, 2015, to May 4, 2015. The Government called ten witnesses, all of whom were cross-examined by defense counsel. To establish that Lowe was part of the conspiracy to distribute oxycodone, the Government's evidence included testimony of Robert Terdiman, a co-conspirator who worked for Lowe as the sole physician at the Southern Boulevard Clinic (the "Clinic"), one of several clinics that Lowe owned and controlled. Terdiman's job interview with Lowe lasted half an hour. Before the

---

[1] Plaintiff makes arguments and allegations challenging his conviction which appear in multiple filings at Docket Numbers 1, 8, 10, 19, 20 and 30, and which are referred to herein as the "Petition." Plaintiff seeks additional relief in these and other filings, which are addressed in a separate order.

interview, Lowe asked whether Terdiman had a license to prescribe controlled substances, but at the interview did not ask about Terdiman's background or experience. Terdiman was instructed to focus only on pain management even though his prior experience was in internal medicine. He saw on average seventy patients per day, about five times more than he did in his prior position. Terdiman recalled that Lowe once was unhappy with him for seeing only twenty-five patients in a single day. He saw each patient for about six minutes and prescribed all of the patients oxycodone. Terdiman did this because he and Lowe had an "understanding" that "I would see the patients there and write the prescriptions for oxycodone and I would keep my job." Terdiman's contract provided that he would be paid a bonus for seeing more patients.

Lowe's defense was that he was not aware of the criminal conspiracy and did not agree to or intend to join the conspiracy. On cross-examination, defense counsel established that Terdiman was responsible for all medical decisions at the Clinic and that Lowe was responsible for all business decisions. Defense counsel established that Terdiman had a working relationship with the drug dealers who brought patients to the Clinic and that Lowe had very little exposure to daily activities there. Defense counsel also established that Terdiman did not affirmatively disclose to Lowe information about Terdiman's background, such as how he had received "shock therapy" which caused cognitive defects.

Defense counsel called three witnesses including Lowe, who testified that he was not aware of or part of the conspiracy. Lowe did not monitor his doctors and "did not manage the clinical aspect of their performance, because [he] trusted . . . their licensure and their experience based on the resumes." Instead, Lowe was in charge of all business and administrative decisions. He met regularly with the clinic mangers, who were his "eyes and ears" at the clinics and executed his policies. His policies included procedures to follow before prescribing oxycodone and a prohibition on illegal activity. To prevent illegal activity at the Clinic, Lowe hired three

separate sets of security guards and set up security cameras. Lowe also stated that he had no relationship with the drug dealers who brought patients to the Clinic and no understanding with Terdiman to conduct illegal activity.

On cross-examination, the Government established Lowe's awareness of criminal activity at the Clinic. Lowe was aware that large crowds and "thugs" gathered around the Clinic each day; that patients had to pay cash even though his other clinics accepted insurance; and that the Clinic had almost no medical supplies or equipment. Lowe knew that Terdiman wrote around seventy prescriptions per day and did not conduct legitimate physical examinations. And Lowe knew that two private insurance companies and the State of New York had investigated his clinics due to their abnormal practices -- for example, the Fidelis Insurance Company investigated Lowe's clinics because, in one three-month period, about twenty-two percent of Fidelis' oxycodone prescriptions came from one of Lowe's clinics.

The jury deliberated for three days and returned a unanimous verdict convicting Lowe of one count of conspiracy to distribute oxycodone. On January 11, 2016, Lowe was sentenced to serve 144 months in prison. He filed a direct appeal to the Second Circuit contending that the Court improperly provided a conscious avoidance instruction to the jury and that the Court improperly directed the jury back to the original charge in response to questions regarding the instructions. The Second Circuit affirmed in all respects. *See United States v. Lowe*, 689 F. App'x 26 (2d Cir. 2017) (summary order).

## II. LEGAL STANDARD

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Salemo v. United*

*States*, 187 F. Supp. 3d 402, 413 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).

A federal prisoner may move to vacate, set aside, or correct his sentence on four grounds pursuant to § 2255:

> (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States, or [(2)] that the court was without jurisdiction to impose such sentence, or [(3)] that the sentence was in excess of the maximum authorized by law, or [(4)] is otherwise subject to collateral attack.'

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (alteration in original) (quoting U.S.C. § 2255(a)). "In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id*.

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to 'raise the strongest claims that it suggests.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks and citation omitted). A pro se litigant, however, is "not exempt . . . from compliance with relevant rules of procedural and substantive law." *Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-CV, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008) (summary order) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

4

## III. DISCUSSION

Lowe makes three arguments pursuant to § 2255. First, he claims that he received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Second, he claims that the Government withheld evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Third, he claims that the Government elicited perjured testimony.

### A. Ineffective Assistance of Counsel

The Petition alleges numerous errors by defense counsel based on his failure to (1) interview or call to the stand individuals who could support the defense theory or rebut the Government's case; (2) review material provided by Petitioner; (3) prepare a response to the Government's expert witness; (4) impeach Terdiman's credibility; and (5) make certain pretrial and trial motions and comport himself in a professional manner. The Petition fails to show that Lowe's constitutional rights were violated by his trial counsel's alleged inadequate representation.

#### i. The Strickland Standard

"There is 'a strong presumption that counsel's conduct fell within the wide range of professional assistance.'" *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017) (citing *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689)); *see Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential"). "To overcome that presumption, a petitioner must establish two elements. First, the petitioner must show that counsel's performance was deficient by demonstrating that the representation 'fell below an objective standard of reasonableness.'" *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 688); "[s]econd, the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing 'that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

### ii. The Alleged Errors

#### 1. Failure to Interview and Call Witnesses

The Petition alleges that defense counsel failed to conduct a "rudimentary investigation of the case . . . by not interviewing any witnesses directly related to the case." Defense counsel did not interview two doctors -- Caesar Santos and Jean-Yves Dastian -- who could have contradicted testimony that safeguards to prevent the illegal distribution of oxycodone were ignored. Defense counsel did not interview police officers who could corroborate Petitioner's testimony that he sought to eliminate crime from the Clinic. Defense counsel did not interview any employees from the clinics under investigation. Defense counsel did not interview, and accordingly did not present as witnesses, unnamed individuals whom Petitioner identified as able to impeach the Government's key witnesses.

First, as to Santos and Dastian, there is no reasonable probability that their testimony would have caused a different result in the proceedings. *Id*. (quoting *Strickland*, 466 U.S. at 694). Santos worked at the Clinic "on a couple occasions" and the other clinic under investigation for "several months." Dastian never worked at the Clinic and stated that he "was not inclined to be helpful" to Lowe. Testimony that Santos and Dastian sought to prevent the improper distribution of controlled substances may have underscored that Terdiman did not take similar steps at the Clinic, bolstering the Government's position that the Clinic was particularly devoted to illegal activity. *See Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) ("[S]trategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary") (citing *Strickland*, 466 U.S. at 690-691).

Defense counsel's interviewing police officers also would not have caused a different result. Defense counsel established through Lowe's testimony that Lowe contacted the police when certain illegal activity at the Clinic occurred and that the police visited the Clinic. Defense counsel buttressed these facts with other evidence regarding how Lowe sought to eliminate criminality at the Clinic, such as through hiring security guards, setting up security cameras, and setting protocols to prevent the illegitimate distribution of controlled substances. The officers therefore would have offered redundant evidence and may have offered testimony that cast Lowe in a poor light. For example, the Government could have elicited on cross-examination that Lowe complained about criminality at the Clinic only when money was stolen from him.

Finally, the alleged failure to interview clinic staff and unnamed potential witnesses is insufficiently specific to compel a hearing under § 2255. *See Gonzalez*, 722 F.3d at 131 ("To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief").

### 2. Failure to Review or Present Material Provided by Petitioner

The Petition alleges that defense counsel failed to investigate and present material that Petitioner made available. Petitioner provided defense counsel with "phone records . . . that directly contradicted" statements by Samantha Livingston, a co-conspirator Government witness, that she and Lowe had weekly calls. Prosecution also provided defense counsel with "notes of interviews with NYPD detectives which substantiated petitioner's testimony regarding multiple visits to [the] police precinct."

There is no "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 694). The Government introduced testimony that Lowe and Livingston

had weekly calls to establish that Lowe was aware of the high number of patients Terdiman saw per day. The Government established this fact in other ways as well, including Lowe's own testimony that he was aware of the high number of patients Terdiman saw, and Terdiman's testimony that Lowe admonished him for seeing too few patients in a single day. The failure to introduce the phone records evidence therefore did not prejudice Lowe. *See Henry*, 409 F.3d at 63-64 ("The question to be asked in assessing the prejudice from counsel's errors is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt") (quoting *Strickland*, 466 U.S. at 695).

Similarly, and as discussed above, defense counsel established the steps that Lowe took to eliminate criminality at the Clinic. Additional evidence would not have made a different result "reasonably probable."

### 3. Failure to Rebut the Government's Expert Witness

The Petition alleges that defense counsel failed to prepare to cross-examine the Government's expert witness and failed to enlist a defense expert to rebut the Government's expert on "key issues." These omissions do not "'[fall] below an objective standard of reasonableness.'" *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 688). The defense theory conceded that a conspiracy to divert oxycodone existed but argued that Lowe had no knowledge of or participation in this conspiracy. The Government's expert in anesthesiology and pain management was called to establish that oxycodone is an addictive drug and to describe best practices for preventing its illegitimate distribution. Disputing this testimony would not

have aided the defense theory that Lowe lacked criminal knowledge and intent, and defense counsel was not unreasonable to focus attention elsewhere.

### 4. Failure to Impeach Terdiman

The Petition alleges that defense counsel's efforts to impeach Terdiman were inadequate. The Petition identifies several ways that defense counsel could have impeached Terdiman's ability to recall past events -- his having failed two state medical examinations, history of depression and taking psychiatric medication and admitted cognitive defects after receiving shock therapy. The Petition also asserts that defense counsel failed to impeach Terdiman's "known false testimony" and his "prior inconsistent statement[s]."[2]

It was not objectively unreasonable for defense counsel not to impeach Terdiman on his memory of past events. *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 688). The defense theory was in part that Lowe focused on business and administrative issues and delegated medical decisions to the doctors who ran the clinics. Defense counsel could reasonably have concluded that discrediting Terdiman's memory would undermine the theory that Lowe properly made Terdiman responsible for medical decisions, and that Lowe had no inkling of the illegitimate medical practices taking place at the Clinic. Also, given the Government's argument that Terdiman was mentally unfit to run a legitimate clinic, and therefore was hired to participate in a criminal enterprise, it was reasonable for the defense not to further highlight Terdiman's cognitive defects. *See Henry*, 409 F.3d at 63 ("Actions or

---

[2] The allegation that defense counsel failed to impeach a witness's known false testimony and prior inconsistent statements does not explicitly refer to Terdiman or any other witness. Construing the Petition in the pro se Petitioner's favor, this allegation refers to Terdiman. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted) (Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest."). Otherwise, this allegation is insufficiently specific. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

9

omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance") (internal quotation omitted).

### 5. Failure to Make Certain Motions and Behave Professionally

The Petition alleges that defense counsel failed to file any pretrial motions; failed to request an adjournment to compel a police witness to appear and testify; and failed to make unspecified objections to preserve the record for appeal. Defense counsel also failed to file a motion to strike a juror who acknowledged at trial having previously known of Terdiman. The Petition lacks adequate specificity to evaluate defense counsel's decisions not to file motions before trial or make objections at trial. *See Gonzalez*, 722 F.3d at 131.

The decision not to move to strike the juror was not objectively unreasonable. The Petition alleges that this juror held Terdiman in "high regard" and that she was "a source of undue influence on the remaining jurors." The record, however, establishes that the juror informed the Court immediately upon realizing that she knew of Terdiman in the 1970's and that she understood that her memory of Terdiman's favorable reputation at that time was not relevant to reaching a decision in this case. The juror also stated that she would not discuss the issue with the other jurors. Given these commitments from the juror, defense counsel's decision not to move to strike the juror was not objectively unreasonable. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record").

The Petition alleges that defense counsel failed to object to the conscious avoidance charge. As the Second Circuit noted on direct appeal, defense counsel solicited this charge. *See Lowe*, 689 F. App'x at 27. There is no reasonable probability that the proceedings would have

omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance") (internal quotation omitted).

### 5. Failure to Make Certain Motions and Behave Professionally

The Petition alleges that defense counsel failed to file any pretrial motions; failed to request an adjournment to compel a police witness to appear and testify; and failed to make unspecified objections to preserve the record for appeal. Defense counsel also failed to file a motion to strike a juror who acknowledged at trial having previously known of Terdiman. The Petition lacks adequate specificity to evaluate defense counsel's decisions not to file motions before trial or make objections at trial. *See Gonzalez*, 722 F.3d at 131.

The decision not to move to strike the juror was not objectively unreasonable. The Petition alleges that this juror held Terdiman in "high regard" and that she was "a source of undue influence on the remaining jurors." The record, however, establishes that the juror informed the Court immediately upon realizing that she knew of Terdiman in the 1970's and that she understood that her memory of Terdiman's favorable reputation at that time was not relevant to reaching a decision in this case. The juror also stated that she would not discuss the issue with the other jurors. Given these commitments from the juror, defense counsel's decision not to move to strike the juror was not objectively unreasonable. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record").

The Petition alleges that defense counsel failed to object to the conscious avoidance charge. As the Second Circuit noted on direct appeal, defense counsel solicited this charge. *See Lowe*, 689 F. App'x at 27. There is no reasonable probability that the proceedings would have

omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance") (internal quotation omitted).

### 5. Failure to Make Certain Motions and Behave Professionally

The Petition alleges that defense counsel failed to file any pretrial motions; failed to request an adjournment to compel a police witness to appear and testify; and failed to make unspecified objections to preserve the record for appeal. Defense counsel also failed to file a motion to strike a juror who acknowledged at trial having previously known of Terdiman. The Petition lacks adequate specificity to evaluate defense counsel's decisions not to file motions before trial or make objections at trial. *See Gonzalez*, 722 F.3d at 131.

The decision not to move to strike the juror was not objectively unreasonable. The Petition alleges that this juror held Terdiman in "high regard" and that she was "a source of undue influence on the remaining jurors." The record, however, establishes that the juror informed the Court immediately upon realizing that she knew of Terdiman in the 1970's and that she understood that her memory of Terdiman's favorable reputation at that time was not relevant to reaching a decision in this case. The juror also stated that she would not discuss the issue with the other jurors. Given these commitments from the juror, defense counsel's decision not to move to strike the juror was not objectively unreasonable. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record").

The Petition alleges that defense counsel failed to object to the conscious avoidance charge. As the Second Circuit noted on direct appeal, defense counsel solicited this charge. *See Lowe*, 689 F. App'x at 27. There is no reasonable probability that the proceedings would have

reached a different result had defense counsel objected to the charge, because the Government also requested this charge, and it was highly relevant to the defense that was presented.

Finally, the Petition alleges that defense counsel generally comported himself in a manner that "rendered a decidedly unprofessional appearance to the presentation of [the] defense case." Petitioner notes that defense counsel failed to show up to the first pretrial conference, left the presentence investigation conference before it even started, rendering Petitioner unrepresented, and was "repeatedly late for proceedings." Assuming the truth of these assertions for purposes of this action, the Petition offers no facts to establish how defense counsel's failings caused the jury to find Defendant guilty where they otherwise would not. *See Henry*, 409 F.3d at 63-64.

### B. *Brady* Claim & Eliciting False Testimony

The Petition alleges that the Government failed to produce reports of Government interviews with Santos and Dastian and medical records regarding Terdiman's mental health treatment.[3] "*Brady* violations have three elements: 'the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Alston*, 899 F.3d 135, 147-48 (2d Cir. 2018) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

---

[3] These claims are also procedurally defaulted because they were not raised on direct appeal. *See Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005) ("Because a motion under § 2255 is not a substitute for direct appeal, [a petitioner] has procedurally forfeited his claim [first raised on the petition] unless he can show '(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence.'") (citing *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998); *see also Robles v. United States*, No. 14 Civ. 9311, 2017 WL 1025993, at *2 (S.D.N.Y. Mar. 16, 2017) ("A federal prisoner cannot use a § 2255 petition to litigate questions that could have been raised on direct appeal but were not.").

The Petition does not state a *Brady* claim. First, as to Terdiman's medical records, Lowe does not identify any such records that were not disclosed, and the Government disclaims awareness of any. Second and similarly as to Dastian, the Government states that it has no record or report of any interview with him. Third, as to Santos, the Drug Enforcement Administration interviewed Santos in March 2014, as memorialized in a DEA Report of Investigation ("Report") attached to the Government's response. The Government assumes for purposes of the Petition that the Government did not produce the Report to Defendant before trial. This omission did not result in a *Brady* violation because nothing in the Report "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *United States v. Payne*, 63 F.3d 1200, 1209 (1995). The Report describes how Santos followed protocols to eliminate the diversion of controlled substances. The Report also states that Santos worked at the Clinic for only seven days and that he asked the staff to reduce the patient load when covering for Terdiman. The Report does not contradict any evidence proffered by the Government regarding Lowe's awareness of or involvement in the conspiracy to distribute oxycodone, and thus provides no basis to find a *Brady* violation. *See Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019) ("To prevail on [a *Brady* claim], a plaintiff must show the materiality of the nondisclosed evidence, a showing that 'does not depend on factual innocence, but rather what would have been proven absent the violation with reference to the likely effect that the suppression of the particular evidence had on the outcome of the trial.'") (citing *Poventud v. City of New York*, 750 F.3d 121, 134 (2d Cir. 2014)); *see also United States v. Ulbricht*, 858 F.3d 71, 112 (2d Cir. 2017) (Petitioner "must demonstrate a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different") (internal quotation marks and citation omitted).

The Petition also alleges the Government elicited perjured testimony from Terdiman, as evidenced by the Report. According to the Report, Santos said that Lowe's clinics included an electronic system for tracking patients who were prescribed controlled substances. In contrast, Terdiman testified that that he was not aware of medical records kept at the Clinic and had no way to know if he had seen a patient previously. "To pursue relief from conviction based on claimed perjury, [the Petitioner] must make a threshold showing that [the witness] in fact willfully testified falsely . . . ." *United States v. Aquart*, 912 F.3d 1, 20 (2d Cir. 2018). After making this threshold showing, "the conviction must be set aside if there is 'any reasonable likelihood' that the testimony could have affected the jury's judgment." *Id*. (quoting *United States v. Cromitie*, 727 F.3d 194, 221-22 (2d Cir. 2013). The evidence in the record is insufficient to make the threshold that Terdiman willfully testified falsely. Santos worked at the Clinic for seven days and never met Terdiman. The Report does not state whether Santos used the tracking system at the Clinic or whether it was accessible at the Clinic. Even if it were, Santos does not -- nor could he -- provide evidence of whether Terdiman knew of the system or how to access it.

## IV. Conclusion

For the reasons stated above, the Petition is denied. Petitioner has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. *Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998); *Rodriguez v. Scully*, 905 F.2d 24, 24 (2d Cir.

1990).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The Clerk of Court is respectfully directed to close this case and to mail a copy of this Opinion and Order to pro se Petitioner.

Dated:  November 8, 2019
       New York, New York

                                                        **LORNA G. SCHOFIELD**
                                                  **UNITED STATES DISTRICT JUDGE**